IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JASON LONGORIA,
      Petitioner,

vs.                            Case No.:  5:16cv150/LAC/EMT

FLORIDA DEPARTMENT OF CORRECTIONS
SECRETARY,
      Respondent.
_____/

## **REPORT AND RECOMMENDATION**

This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (ECF No. 1).  Respondent filed an answer and relevant portions of the state court record (ECF No. 17).  Petitioner filed a reply (ECF No. 21).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is further the

opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.    BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 17).[1]  Petitioner was charged in the Circuit Court in and for Washington County, Florida, Case No. 2010-CF-159, with one count of attempted felony murder (Count I), one count of robbery with a firearm (Count II), and one count of aggravated battery with great bodily harm and with a deadly weapon (Count III) (Ex. A at 17–18).   On May 18, 2011, Petitioner entered a written plea agreement, pursuant to which he agreed to plead nolo contendere to all Counts, and Petitioner and the State agreed that he would be adjudicated guilty and sentenced to twenty-five years in prison on Count I, a minimum mandatory sentence of twenty-five years in prison on Count II, and fifteen years in prison on Count III, with all sentences running concurrently (*id.* at 64–65).   At a hearing the same day, the trial court accepted the plea and sentenced Petitioner in accordance with the plea agreement (Ex. A at 88–97, Ex. B).

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (ECF No. 17).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Petitioner filed a notice of appeal on June 1, 2011 (Ex. A at 98).  On June 17, 2011, Petitioner filed a motion to withdraw his plea on grounds of misadvice by defense counsel, but he voluntarily dismissed the motion on July 21, 2011 (*id.* at 105–08, 112).  The trial court appointed appellate counsel for Petitioner (*id.* at 133).  Petitioner's counsel filed a brief in the Florida First District Court of Appeal ("First DCA"), Case No. 1D11-3103, pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), asserting that the appeal was "wholly frivolous" (Ex. C).  The First DCA granted Petitioner an opportunity to file a pro se initial brief, but Petitioner notified the First DCA that he did not intend to do so (Ex. D).  The First DCA affirmed the judgment per curiam without written opinion on July 9, 2012, with the mandate issuing August 6, 2012 (Ex. E).  <u>Longoria v. State</u>, 92 So. 3d 826 (Fla. 1st DCA 2012) (Table).

On August 28, 2012, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. F).  In an order rendered December 17, 2012, the state circuit court struck the motion as facially insufficient, without prejudice to Petitioner's filing an amended motion within thirty days (Ex. G).  Petitioner filed an amended motion on April 12, 2013 (Ex. H), a second amended motion on October 14, 2013 (Ex. I), a supplement on November 4, 2013 (Ex. J), a third amended motion on January 16, 2014 (Ex. L), and a fourth amended motion

on March 19, 2014 (Ex. M at 1–19). The state circuit court summarily denied two of the seven claims presented in the fourth amended Rule 3.850 motion (*id.* at 20–24). After the State filed a response to the surviving claims, the court denied an additional claim and set an evidentiary hearing on the remaining four claims (*id.* at 147–50). At Petitioner's request, the court appointed counsel to represent Petitioner (*id.* at 162–67). The evidentiary hearing was held on February 13, 2015 (Ex. N). Following the hearing, the state circuit court issued a final order denying all of Petitioner's claims (Ex. M at 175–79). Petitioner, through counsel, appealed the decision to the First DCA, Case No. 1D15-2014 (Ex. P). The First DCA affirmed the decision per curiam without written opinion on February 5, 2016, with the mandate issuing April 7, 2016 (Ex. S). Longoria v. State, 215 So. 3d 63 (Fla. 1st DCA 2016) (Table).

On November 18, 2013, while the Rule 3.850 motion was pending, Petitioner filed a motion to correct illegal sentence, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Ex. U at 1–6). The state circuit court summarily denied the motion in an order rendered January 13, 2014 (*id.* at 13–14). Petitioner appealed the decision to the First DCA, Case No. 1D14-0299 (Ex. V). The First DCA affirmed the decision per curiam without written opinion on May 30, 2014, with the mandate

issuing August 4, 2014 (Ex. X).  <u>Longoria v. State</u>, 141 So. 3d 1204 (Fla. 1st DCA 2014) (Table).

Petitioner filed the instant federal habeas action on June 1, 2016 (ECF No. 1).

## II.    STANDARD OF REVIEW

Federal courts may grant habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19. Section 2254(d) provides, in relevant part:

> **(d)**  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > **(1)**  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > **(2)**  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under
> the "unreasonable application" clause, a federal habeas court may grant
> the writ if the state court identifies the correct governing legal principle
> from this Court's decisions but unreasonably applies that principle to the
> facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the Williams framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  Thaler v. Haynes, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); Woods v. Donald, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. See Woods, 135 S. Ct. at 1377 (holding, as to claim that counsel was per se ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.

*See* Panetti v. Quarterman, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. Williams, 529 U.S. at 409; *see* Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam). In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington, *supra*, at 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

Woods, 135 S. Ct. at 1376 (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on

an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."  28 U.S.C. § 2254(d)(2).  The "unreasonable determination

of the facts" standard is implicated only to the extent the validity of the state court's

ultimate conclusion is premised on unreasonable fact finding.  *See* Gill v. Mecusker,

633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable application" clause,

the federal court applies an objective test.  Miller-El v. Cockrell, 537 U.S. 322, 340,

123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based

on a factual determination "will not be overturned on factual grounds unless

objectively unreasonable in light of the evidence presented in the state court

proceeding.").  Federal courts "may not characterize . . . state-court factual

determinations as unreasonable merely because we would have reached a different

conclusion in the first instance."  Brumfield v. Cain, — U.S. —, 135 S. Ct. 2269,

2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all

factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1).

The petitioner bears "the burden of rebutting the presumption of correctness by clear

and convincing evidence."  *Id.*; *see, e.g.*, Miller-El, 537 U.S. at 340 (explaining that

a federal court can disagree with a state court's factual finding and, when guided by

the AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications.  *See* Cave v. Sec'y for Dep't of Corr., 638 F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit has declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision."  Gill, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied the AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* Panetti, 551 U.S. at 954.  Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "If this standard is difficult to meet, that is because it was meant to be."  Richter, 562 U.S. at 102.

Within this framework, the court will review Petitioner's claims.

III.   PETITIONER'S CLAIMS

A.   <u>Ground One:  "Trial counsel rendered ineffective assistance when he failed to advise the petitioner that if he chose to proceed to trial Joshua Gabriel Smith would have been available to testify."</u>

Petitioner alleges prior to entry of his plea, he was aware of a recorded statement that Joshua Gabriel Smith ("Gabriel Smith") had given to Sergeant Mark Collins, in which Gabriel Smith stated that Petitioner's co-defendant, Joshua Blake Smith ("Blake Smith"), told him that he committed a robbery during which he shot the victim with a shotgun (ECF No. 1 at 4–5; ECF No. 2 at 4–6; ECF No. 21 at 5–10). Petitioner alleges Gabriel Smith also told Sergeant Collins that Blake Smith identified his accomplice as "Jeremy Phillip, or something like that" (*id.*).  Petitioner alleges that even though he was aware of Gabriel Smith's statement, he was not aware that Gabriel Smith would be available to testify at trial (*id.*).  Petitioner alleges defense counsel, Attorney Dyer, failed to inform him that Gabriel Smith had been located in the FDOC, and that Dyer had arranged for Smith to be transported to Washington County prior to Petitioner's trial (*id.*).  Petitioner alleges he would not have entered a plea if Attorney Dyer had told him that Gabriel Smith was available to testify (*id.*).

Respondent contends, and Petitioner does not dispute, that the state court adjudicated the merits of this claim (ECF No. 17 at 21–31; *see* ECF No. 21 at 9). Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law, nor did the adjudication rest upon an unreasonable determination of the facts in light of the evidence presented at the post-conviction evidentiary hearing (*id.*).

      1.     Clearly Established Federal Law

A defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. Lafler v. Cooper, 566 U.S. 156, 162–63, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012) (citing Missouri v. Frye, 566 U.S. 133, 145, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012), and McMann v. Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." Lafler, 132 S. Ct. at 1387. The two-part test articulated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) applies to claims that counsel was ineffective during the plea process. Lafler, 132 S. Ct. at 1384 (applying Strickland's two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); Frye, 132 S. Ct. at 1404, 1409–10 (applying Strickland's two-part

test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); Hill v. Lockhart, 474 U.S. 52, 48, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (applying Strickland's two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel).

To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. 466 U.S. at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

The focus of inquiry under the performance prong of Strickland is whether counsel's assistance was reasonable considering all the circumstances and under prevailing professional norms. Strickland, 466 U.S. at 688–89, 691. "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to

reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

"[T]here are no 'absolute rules' dictating what reasonable performance is . . . ."

Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d

at 1317).

The Supreme Court warned about second-guessing professional judgments

made by counsel in a plea situation:

> [T]he decision to plead guilty before the evidence is in frequently
> involves the making of difficult judgments. All the pertinent facts
> normally cannot be known unless witnesses are examined and
> cross-examined in court. Even then the truth will often be in dispute. In
> the face of unavoidable uncertainty, the defendant and his counsel must
> make their best judgment as to the weight of the State's case. Counsel
> must predict how the facts, as he understands them, would be viewed by
> a court . . . . Questions like these cannot be answered with certitude; yet
> a decision to plead guilty must necessarily rest upon counsel's answers,
> uncertain as they may be. Waiving trial entails the inherent risk that the
> good-faith evaluations of a reasonably competent attorney will turn out
> to be mistaken either as to the facts or as to what a court's judgment
> might be on given facts. That a guilty plea must be intelligently made is
> not a requirement that all advice offered by the defendant's lawyer
> withstand retrospective examination in a post-conviction hearing.

McMann, 397 U.S. at 769–70.

The Eleventh Circuit has commented that "[t]he right to competent plea bargain

advice is at best a privilege that confers no certain benefit," because a defendant "may

make a wise decision" without assistance of counsel or a "bad one despite superior advice from his lawyer." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam). "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between [entering a plea] and going to trial." *Id.* This requires counsel to "offer his informed opinion as to the best course to be followed" and impart "a general knowledge of the possible legal consequences of facing trial" to the defendant. *Id.* Therefore, a defendant's failure to "correctly assess every relevant factor entering into his decision" does not undermine a validly entered guilty plea. *Id.* at 1509.

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. *See* Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). To establish prejudice, Petitioner must show that there is a reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694 ). In the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally

ineffective performance affected the outcome of the plea process." <u>Hill</u>, 474 U.S. at

59.

    2.  Federal Review of State Court Decision

   Petitioner raised this claim of ineffective assistance of trial counsel ("IATC")

as Ground Two, sub-claim C of his fourth amended Rule 3.850 motion (Ex. M at

11–12).  In the state circuit court's written decisions denying Petitioner's IATC

claims, the court correctly stated the deficient performance and prejudice prongs of

the <u>Strickland</u> standard as the applicable legal standard (*id.* at 184).  The court

adjudicated this IATC claim as follows:

>    In **Ground 2 Claim C**, Defendant alleges that trial counsel was
> ineffective for failing to investigate and depose Joshua Gabriel Smith, a
> State witness listed in discovery.  Specifically, the Defendant submits
> that counsel never deposed this witness.  However, the Defendant
> maintains that this witness provided a statement to investigators
> informing law enforcement that a man named Joshua "Blake" Smith shot
> the victim and he was accompanied by an accomplice named Jeremy
> Phillip.  Therefore, Defendant articulates that counsel failed to
> investigate, take depositions, and subpoena a witness who identified
> someone other than the Defendant as the man who committed the crimes.
> However, a review of the attached record [reveals] that the Defendant's
> accomplice, Joshua "Blake" Smith, provided a detailed account to law
> enforcement of the events that occurred during the robbery including a
> traffic stop wherein Defendant and his accomplice were stopped by law
> enforcement in Bay County Florida on the night this crime allegedly
> occurred.  Further, the victim was able to positively identify the
> Defendant as the shooter in this robbery that resulted in shots being fired
> at the victim, which resulted in injury.

At the evidentiary hearing, defense counsel stated that he was aware of a sworn statement that Joshua Gabriel Smith provided to law enforcement. In fact, he had a copy of said statement. Counsel further articulated that this witness was incarcerated in DOC at the time and that there was an agreement between counsel and the State that if there was going to be a trial, the witness would be transported to Washington County, Florida before trial to be deposed at that time. Counsel testified that he didn't want to perform a deposition over the phone. Although counsel was very aware of this testimony and how it may help his client, there was a question of whether or not this witness would stick with the story or change it. If the witness stuck with the story, it would be impeachment evidence against the co-defendant. Further, counsel was aware of Joshua "Blake" Smith's testimony, and he did file a motion in limine, which was pending at the time of plea, but would have been heard if the Defendant proceeded to trial.

On the other hand, Defendant testified that he was unaware that this particular witness was in custody. Further, Defendant stated that he received no discussion as to the potential scheduling of the deposition for said witness. However, Defendant stated that he was aware of the statement of this witness. Finally, Defendant stated that he would not have taken plea if this witness was stating that it wasn't him who committed the crime.

As to this ground, Defendant's allegations are due to be denied. Defense counsel was well aware of Joshua Gabriel Smith's testimony and he had a plan with the prosecutor to depose said witness in the future should a trial come to fruition. Thus, Defendant cannot establish deficient performance or resulting prejudice from counsel's actions. Further, counsel still had to contend with the co-defendant testifying and the array of other evidence that was stacked against his client. Although the Defendant maintains that he would have insisted on going to trial, the likelihood of said success at trial with the limited defense strategy, and the possible punishment of life imprisonment [sic]. Defendant's allegations are without merit.

(Ex. M at 177).  The First DCA affirmed the circuit court's decision without written opinion (Ex. S).

The state court record shows that Petitioner's trial was set for May 23, 2011 (*see* Ex. A, Docket Inquiry).  On May 12, 2011, Attorney Dyer filed a motion in limine seeking to exclude statements that Blake Smith made to Sergeant Mark Collins one year earlier, on May 19, 2010 (*see* Ex. A at 61–62).  Attorney Dyer's motion stated that Blake Smith was charged with the same crimes as Petitioner, and although the State listed Blake Smith as a witness, there was no reason to believe that Smith would ever testify at Petitioner's trial (*id.*).  Attorney Dyer sought exclusion of Blake Smith's statements to Sergeant Collins if Smith failed to testify at Petitioner's trial, on the ground that the statements were hearsay and  would violate Petitioner's Confrontation Clause rights (*id.*).  After Attorney Dyer filed the motion in limine (less than two weeks prior to Petitioner's trial date), the State "flipped" Blake Smith, and Smith entered a plea agreement wherein he agreed to testify against Petitioner (*see* Ex. N at 10–11, 22–23).  Petitioner then entered his plea agreement on May 18, 2011 (Ex. A at 64–65).

At the post-conviction evidentiary hearing, Attorney Dyer described how Blake Smith's "flipping" affected Petitioner's position with respect to going to trial:

Well, initially, I mean he [Petitioner] was adamant that he was innocent, that he his [sic] alibi witnesses would come through for him and that he would be able to cast enough doubt that he wasn't, it would have been impossible for him to have committed the crime because he was down at Show-n-Tail or Toy Box down in Panama City at the time that this incident occurred.  Then later as those alibi witnesses never really seemed to pan out, and later it seemed to, we kind of geared our defense more towards the facial hair issue, because the victim was really adamant about that facial hair issue, then that was going to be, that was really our main, our main defense was going to be that, or casting doubt with a guy that says, you know, the jury would have heard the victim say that's the guy that shot me, but [sic].  And then we would have had another witness [Anna Sather] potentially to come forward and say no, that's not true about the facial hair.  That was going to be the main defense.  And I think up until the point that they flipped the co-defendant, I think, I don't know how good a shot it was, but at least we had something to go on.  Once the co-defendant flipped and now we had two people pointing the fingers, I think the case became impossible at that point, and I think that's about the way I described it to him is I think, I mean, about like winning the—

Q. [by the State]  The evidence is against—

A.  —lottery, yeah.

Q.  And so you had noted that basically that his case got much worse, the evidence against him got much stronger once the co-defendant flipped—

A.  Yes, ma'am.

Q.  And what was his position at that time?  You I know, knowing everything that he knew at that time, was he—

A.  Well, once the co-defendant, once I went, after I left the courthouse here [after attending Blake Smith's plea hearing (*see* Ex. N

at 22–23)] and went back over to the jail and informed [Petitioner] that the co-defendant had just entered a plea and agreed to testify against him, then at that point Mr. Longoria knew that, I think, you could see the expression over his face just kind of change, I think he knew it was over at that point.  And we agreed to enter a deal for 25 years versus having a trial and run the risk of being sentenced to life.

Q.  And so that was just something that he had weighed, that he didn't want to run the risk of a life sentence with the co-defendant testifying against him, is that correct?

A.  Yes, ma'am.  Through our conversations I would say that's true.

(Ex. N at 25–26).

Attorney Dyer also testified regarding how he would have used Gabriel Smith as a trial witness (Ex. N at 21).  Dyer testified that he and the prosecutor agreed that Gabriel Smith would be transported to Washington County a few days prior to Petitioner's jury selection, so that Dyer could depose him and determine whether he was going to "stick with the story" he told Sergeant Collins (*id.* at 11, 20–21). Attorney Dyer testified that, assuming Gabriel Smith stuck with the story he told Sergeant Collins, Dyer intended to use Gabriel Smith as an impeachment witness for Blake Smith (*id.* at 21).  Indeed, the only way a jury could have heard Gabriel Smith's testimony regarding what Blake Smith told him was if Blake Smith testified inconsistently with his statements to Gabriel Smith.  Petitioner alleges Blake Smith

confessed to Gabriel Smith that he and his accomplice committed the armed robbery

and shooting (*see* ECF No. 1 at 4).  But there is no indication or evidence that Blake

Smith would have denied he was involved in the robbery and shooting if he had

testified at Petitioner's trial.  Therefore, Joshua Gabriel Smith's testimony had no

impeachment value in this regard.

Petitioner also alleges Gabriel Smith told Sergeant Collins that Blake Smith

identified his accomplice as "Jeremy Phillip" (*see* ECF No. 1 at 4).  However, the

transcript of Gabriel Smith's statement to Sergeant Collins shows that Gabriel Smith

did not tell Sergeant Collins that Blake Smith definitively identified his accomplice

as Jeremy Phillip.  Instead, the transcript shows that when Sergeant Collins asked

Gabriel Smith the name of Blake Smith's accomplice, Gabriel Smith responded:

> [O]nce you talk to him [Blake Smith], he'll tell you who it is.  I've never
> even think [sic] his name is Phillip or something, it was somebody he
> was running around with . . . .
> . . . .
> Jeremy Phillip I think is what he (unintelligible).

(Ex. M at 84–85).  Thus, even if Blake Smith testified unequivocally that Petitioner

was his accomplice, Gabriel Smith's equivocal statement, that he "thought" Blake

Smith told him that the other robber's name was Jeremy Phillip, would have had little,

if any, impeachment value.

Furthermore, any beneficial effect of Gabriel Smith's impeachment testimony would have been minimized by the other evidence linking Petitioner to the robbery and shooting.  The shooting occurred at approximately 4:02 a.m. on October 11, 2009 (*see* Ex. M at 28–34).  At 5:12 a.m., the Bay County Sheriff's Office conducted a traffic stop of a vehicle driven by Petitioner, and the only passenger in the vehicle was Blake Smith (*see id.* at 119–22).  Additionally, the victim positively identified Petitioner from a photographic line-up.  Moreover, according to Attorney Dyer, none of Petitioner's alleged alibi witnesses had panned out with the exception of Anna Sather, but Ms. Sather was reluctant to commit to the time frame needed to establish an alibi defense, and would only commit to testifying that Petitioner did not have facial hair at the time in question (apparently the victim stated that the shooter had facial hair).

In light of all of these factors, a reasonable defense attorney could conclude that Gabriel Smith's testimony would have minimal value in creating reasonable doubt that Petitioner was the man with Blake Smith during the robbery and shooting.  And although Gabriel Smith's testimony may have created reasonable doubt as to whether it was Petitioner or Blake Smith who actually pulled the trigger of the shotgun (Gabriel Smith told Sergeant Collins that Blake told him he shot the victim with the

shotgun), it would not have changed Petitioner's liability as a principal to the crime

of robbery with a firearm.

Florida law provides:

> Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he or she is or is not actually or constructively present at the commission of such offense.

Fla. Stat. § 777.011. The law of principals allowed Petitioner to be convicted of

robbery with a firearm regardless of whether he personally possessed the firearm. *See*

McPherson v. State, 198 So. 3d 675, 676 (Fla. 2d DCA 2015) (citing Padre v. State,

627 So. 2d 526, 527 (Fla. 2d DCA 1993)); Dotel v. State, 175 So. 3d 830 (Fla. 4th

DCA 2015) (trial court erred when it reduced defendant's robbery with a firearm

conviction to simple robbery, and thus, case would be remanded to the trial court to

reinstate the armed robbery conviction and the life sentence; multiple co-defendants

possessed firearms during the robbery, jury convicted the defendant of robbery with

a firearm as a principal, and robbery statute enhanced the penalty to life imprisonment

when robbery was committed with a firearm, and thus, court did not need to rely on

statutory firearm enhancement provision); Lopez v. State, 833 So. 3d 283, 284 (Fla.

5th DCA 2002) (affirming defendant's conviction for robbery with a firearm despite

jury's special finding that defendant did not carry, display, use, or possess a firearm). Because one of the robbers carried a firearm in the course of committing the robbery, the robbery was a first degree felony, punishable by imprisonment for a term of years not exceeding life imprisonment.  *See* Fla. Stat. § 812.13(2)(a).  Thus even if Blake Smith had testified that Petitioner pulled the trigger during the robbery, and even if defense counsel could have cast doubt on that testimony with Gabriel Smith's testimony that Blake Smith told him he (Blake) actually pulled the trigger, Petitioner still would have been liable as a principal in the robbery with a firearm, which carried a maximum sentence of life in prison.

Because Gabriel Smith's potential testimony would not have impacted Petitioner's criminal liability for any of the offenses, or changed the potential life sentence Petitioner faced if he was convicted of robbery with a firearm, Attorney Dyer's advising Petitioner to accept the plea deal, which limited Petitioner's maximum sentence exposure on all Counts to a total of twenty-five years, was reasonable, notwithstanding Dyer's failure to inform Petitioner that Gabriel Smith could be used as an impeachment witness if Gabriel Smith stuck to the story he told Sergeant Collins regarding his conversation with Blake Smith.

Petitioner failed to demonstrate that the state court's adjudication of his IATC claim, based upon Attorney Dyer's failure to inform him that Gabriel Smith was available to testify at trial, was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of <u>Strickland</u>.  Therefore, Petitioner is not entitled to federal habeas relief on Ground One.

> B.    <u>Ground Two:  "Trial counsel rendered ineffective assistance when he failed to advise Petitioner that his charges of attempted felony murder and armed robbery violate double jeopardy."</u>

Petitioner alleges under Florida law, convictions for attempted felony murder and armed robbery violate double jeopardy when the shooting of the victim is the only force used to effectuate the taking of the property (ECF No. 1 at 6; ECF No. 2 at 6–7; ECF No. 21 at 10–18).  Petitioner alleges Attorney Dyer failed to advise him that he could not be convicted of both attempted first degree felony murder and armed robbery (*id.*).  Petitioner alleges if counsel had properly advised him, he would not have accepted the plea, and instead would have insisted on going to trial (*id.*).

Respondent contends the state court's adjudication of the merits of this IATC claim was not contrary to or an unreasonable application of <u>Strickland</u> (ECF No. 17 at 31–37).

> 1.    Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

### 2.    Federal Review of State Court Decision

Petitioner raised this claim as Ground 2, sub-claim A of his fourth amended Rule 3.850 motion (Ex. M at 7–8). The state circuit court adjudicated the claim as follows:

> In Ground 2 Claim A, Defendant alleges that counsel was ineffective for his failure to inform him of a valid double jeopardy defense. The double jeopardy clause in both the state and federal constitutions protects criminal defendants from multiple convictions and punishments for the same offense. "The prevailing standard for determining the constitutionality of multiple convictions for offenses arising from the same criminal transaction is whether the Legislature 'intended to authorize separate punishments for the two crimes.'" *See Valdez v. State*, 3 So. 3d 1067, 1070 (Fla. 2009) (quoting *M.P. v. State*, 682 So. 2d 79, 81 (Fla. 1996)). Absent clear legislative intent to authorize separate punishments, courts employ the *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932) "same elements" test, *i.e.*, "whether each offense has an element that the other does not," codified at section 775.021 (4)(a), Florida Statutes. If each of the offenses has an element that the other does not, the court must then determine if one of the exceptions set forth in section 775.021(4)(b) applies to preclude separate convictions and sentences. *Valdez*, 3 So. 3d at 1070.

> In his motion, the Defendant submits that the charged offenses in Count I, Attempted Felony Murder, a violation of Section 782.051(1), Florida Statutes and the charge in Count 2, Robbery with a Firearm, a violation of Section 812.13(1) and (2)(a), Florida Statutes are a double jeopardy violation and a valid defense that should have been advised by trial counsel. Defendant further argues that charging the Defendant in this manner required the use of the same element essential to the

underlying felony in order to obtain a conviction for the attempted felony murder charge. Based upon the foregoing, the Defendant requests his conviction and sentence for both Counts 1 and 2 be vacated on this proposition. Further, Defendant submits that if he was properly advised by counsel, he would not have accepted a plea but would have proceeded to trial. However, in reviewing Sections 775.021(4)(a) and 4(b) of the Florida Statutes and the Fla. Std. Jury Inst. (Crim.) for both Attempted Felony Murder and Robbery with a Firearm, respectively, the Defendant's allegations appear to be without legal merit when going through the *Blockburger* analysis codified pursuant to Section 775.021, Florida Statutes. <u>*See e.g., Boler v. State*</u>, 678 So. 2d 319 (Fla. 1996). Further, the Court would note that the Defendant fought the victim, shot the victim, and struck the victim on the back of the head with a shotgun. Accordingly, Defendant's ground is due to be denied.

(Ex. M at 147–48). The First DCA affirmed the circuit court's decision without written opinion (Ex. S).

The state court found as fact that Petitioner fought the victim, shot the victim, and struck the victim on the back of the head with a shotgun. Petitioner has not pointed to clear and convincing which renders these factual findings unreasonable; indeed, Petitioner does not appear to dispute these findings. Further, the transcript of an adversarial preliminary hearing held on August 2, 2010, which is part of the state post-conviction record, shows that the victim, Daryl Stephens, testified that he was asleep in his motel room and was awakened by beating on his door (Ex. M at 63–71). Mr. Stephens testified he opened the door and was accosted by two men, one armed with a shotgun and the other armed with a pistol. Mr. Stephens testified that the man

with the pistol ordered him to get on the floor and said he wanted money. Mr. Stephens testified he put his hands up, and after the man continued to demand money, Stephens threw all of the money from his pockets onto the bed. Mr. Stephens testified that the man with the pistol said he was going to blow Stephens' head off, so Stephens grabbed the man's arm, twisted it, took the pistol, and pushed the man across the room. Stephens testified that he tried to fire the pistol, but it did not fire. Mr. Stephens testified that the man then grabbed the shotgun from the other man and shot Stephens in the chest point blank. Stephens testified that he went to his knees, and the man who shot him laughed and hit him in the back of the head with the shotgun. Mr. Stephens testified that the men took everything that he had thrown on the bed.

"The Double Jeopardy Clause of the Fifth Amendment provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" Justices of Boston Mun. Court v. Lydon, 466 U.S. 294, 306, 104 S. Ct. 1805, 80 L. Ed. 2d 311 (1984). This guarantee is applicable to the states through the Fourteenth Amendment. *See* Benton v. Maryland, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). The Double Jeopardy Clause embodies three separate guarantees: "It protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments

for the same offense."  Justices, 466 U.S. at 307–08 (citation and footnote omitted).

"With respect to cumulative sentences imposed in a single trial, the Double Jeopardy

Clause does no more than prevent the sentencing court from prescribing greater

punishment than the legislature intended."  Missouri v. Hunter, 459 U.S. 359, 366,

103 S. Ct. 673, 74 L. Ed. 2d 535 (1983); Whalen v. United States, 445 U.S. 684, 689,

100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980) ("The Double Jeopardy Clause at the very

least precludes . . . courts from imposing consecutive sentences unless authorized by

[the legislature] to do so."); Alberta v. United States, 450 U.S. 333, 344, 101 S. Ct.

1137, 67 L. Ed. 2d 275 (1980) (stating, "the question of what punishments are

constitutionally permissible is not different from the question of what punishment the

Legislative Branch intended to be imposed.  Where [the legislature] intended . . . to

impose multiple punishments, imposition of such sentence does not violate the

Constitution.").

"Where the same conduct violates two statutory provisions, the first step in the

double jeopardy analysis is to determine whether the legislature . . . intended that each

violation be a separate offense."  Garrett v. United States, 471 U.S. 773, 778, 105 S.

Ct. 2407, 85 L. Ed. 2d 764 (1985)).  Although the Double Jeopardy Clause does not

flatly prohibit the legislature from punishing the same conduct under two different

statutes, federal courts assume that the legislature ordinarily does not intend to do so

"'in the absence of a clear indication of contrary legislative intent.'"  <u>Hunter</u>, 459 U.S.

at 366 (quoting <u>Whalen</u>, 445 U.S. at 691–92); *see also* <u>Garrett</u>, 471 U.S. at 779

(holding that multiple punishments are permissible "when the legislative intent is clear

from the face of the statute or the legislative history"); <u>Ohio v. Johnson</u>, 467 U.S. 493,

499 n.8, 104 S. Ct. 2536, 81 L. Ed. 2d 425 (1984) ("[I]f it is <u>evident</u> that a state

legislature intended to authorize cumulative punishments, a court's inquiry is at an

end." (emphasis added)).  If no clear intention is evident, the provisions are analyzed

under the "same elements" test announced in <u>Blockburger v. United States</u>, 284 U.S.

299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), which "inquires whether each offense

contains an element not contained in the other; if not, they are the 'same offence' and

double jeopardy bars additional punishment and successive prosecution."  <u>United

States v. Dixon</u>, 509 U.S. 688, 696, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993).

Although the court will decide under federal law whether a double jeopardy violation

has occurred, it must accept the Florida courts' interpretation of the state's own

statutes.  <u>Hunter</u>, 459 U.S. at 368.

The language of the Florida criminal statutes defining robbery with a firearm

and attempted felony murder does not contain a clear statement of whether the

legislature intended to punish the same conduct under both of those statutes. *See* Fla. Stat. §§ 782.051, 812.13. Therefore, the court will look to Florida's rules of statutory construction. Those rules provide, in relevant part:

775.021. Rules of construction

(1) The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.
. . . .
(4)(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.

(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:

1. Offenses which require identical elements of proof.

2. Offenses which are degrees of the same offense as provided by statute.

3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.

Fla. Stat. § 775.021 (2007).  Based upon this language, it is clear that the Florida Legislature expressly intended to convict and sentence a defendant for each offense he commits during the course of a single criminal episode, with three exceptions to that rule.  *See* Fla. Stat. § 775.021(4)(b).  The exceptions adopt the <u>Blockburger</u> test. *See* <u>State v. Weller</u>, 590 So. 2d 923, 925 (1991).

Petitioner has failed to show that the offenses in the instant case satisfy the first <u>Blockburger</u> exception, codified at Florida Statutes § 775.021(4)(b)1.  The offense of robbery with a firearm has the following elements:  (1) taking of money or other property, (2) from the person or custody of another, (3) with intent to either permanently or temporarily deprive the person or the owner of the money or other property, (4) when in the course of the taking there is the use of force, violence, assault, or putting in fear, and (5) when in the course of the robbery the offender carried a firearm or other deadly weapon.  *See* Fla. Stat. § 812.13(1)–(2)(a). Here, Petitioner and Blake Smith's pointing a pistol and a shotgun at Mr. Stephens and demanding money, and physically struggling with Mr. Stephens and taking the money he had thrown onto the bed, satisfied all of the elements of robbery with a firearm.

The offense of attempted felony murder is defined as:  (1) perpetrating or attempting to perpetrate any felony enumerated in Fla. Stat. § 782.04(3) (which

includes robbery, *see* § 782.04(3)(d)), and (2) committing, aiding, or abetting an intentional act that is not an essential element of the felony and that could, but does not, cause the death of another.  *See* Fla. Stat. § 782.051(1).  Here, Petitioner's perpetrating the robbery and also shooting Mr. Stephens, or aiding Blake Smith in shooting him, satisfied all of the elements of attempted felony murder.

Because each of the offenses of robbery with a firearm and attempted felony murder required proof of an element that was not an element of the other, the first Blockburger exception, codified at § 775.021(4)(b)1. does not apply to Petitioner's convictions or sentences for these offenses.  Furthermore, the second exception is not satisfied because neither of the crimes is a degree of the other.  Additionally, the third exception is not satisfied because robbery with a firearm is not a necessarily lesser included offense of attempted felony murder, or vice versa.

The state post-conviction court reasonably concluded that Attorney Dyer was not deficient for failing to advise Petitioner of a double jeopardy defense to the armed robbery and attempted felony murder charges.  Therefore, the state court's rejection of Petitioner's IATC claim was not contrary to or an unreasonable application of Strickland.

C.    Ground Three:  "The cumulative effect of trial counsel's deficient performance resulted in the Petitioner's plea not being voluntarily entered."

Petitioner contends the cumulative effect of Attorney Dyer's alleged errors denied him the right to trial (ECF No. 1 at 7; ECF No. 2 at 8). Petitioner alleges if Attorney Dyer had functioned in a constitutionally effective manner, he would not have entered a plea and instead would have insisted on going to trial (*id.*). Petitioner admits he did not exhaust this claim, and argues he is entitled to federal review pursuant to <u>Martinez v. Ryan</u>, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012), because he was proceeding pro se when he filed his initial Rule 3.850 motion (*see id.*).

Respondent contends Ground Three is unexhausted and procedurally defaulted (ECF No. 17 at 38–39). Respondent further contends Petitioner has not presented a "substantial" constitutional claim, as required by <u>Martinez</u>, because Petitioner has not shown error of constitutional dimension with respect to either of the IATC claims asserted in his § 2254 petition, therefore, he cannot show that the cumulative effect of the alleged errors deprived him of fundamental fairness (*id.*).

Although the Eleventh Circuit has noted, on direct appeal of a federal conviction, that the cumulative effect of several errors that are harmless by themselves could so prejudice the defendant's right to a fair trial that a new trial may be necessary,[2] the Eleventh Circuit has never expressly recognized, in a § 2254

---

[2] *See* <u>United States v. Baker</u>, 432 F.3d 1189, 1223 (11th Cir. 2005) ("The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate

proceeding, a freestanding "cumulative effect" claim, based upon the assertion that alleged errors of the trial court, defense counsel, or the State, or a combination thereof, rendered a state criminal trial fundamentally unfair even though such errors were individually harmless or non-prejudicial. *See, e.g.,* Conklin v. Schofield, 366 F.3d 1191, 1210 (11th Cir. 2004) (applying pre-AEDPA standard of review and denying claim that trial court errors and conduct of trial counsel combined to rob petitioner of fair trial and sentencing, but not relying upon Supreme Court precedent for its decision); Sims v. Singletary, 155 F.3d 1297 (11th Cir. 1998) (applying pre-AEDPA standard of review and holding that district court erred in finding that cumulative guilt stage errors prejudiced petitioner during penalty phase); Cargill v. Turpin, 120 F.3d 1366, 1386 (11th Cir. 1997) (applying pre-AEDPA standard of review and declining petitioner's invitation to entertain "cumulative error" claim because petitioner's trial was not fundamentally unfair); Dobbs v. Kemp, 790 F.2d 1400, 1505 (11th Cir. 1986) (applying pre-AEDPA standard of review and denying petitioner's claim that improper prosecutorial argument and evidentiary errors rendered trial fundamentally

---

reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal.") (internal quotations and citations omitted); United States v. Ramirez, 426 F.3d 1344, 1353 (11th Cir. 2005) ("[T]he 'cumulative effect' of multiple errors may so prejudice a defendant's right to a fair trial that a new trial is required, even if the errors considered individually are non-reversible.") (quoting United States v. Thomas, 62 F.3d 1332, 1343 (11th Cir.1995) and citing United States v. Adams, 74 F.3d 1093, 1099–1100 (11th Cir. 1996)).

unfair and citing Donnelly v. DeChristoforo, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed.

2d 431 (1973)); Bronstein v. Wainwright, 646 F.2d 1048, 1056 (5th Cir. 1981)

(same).[3]

In any event, cumulative effect analysis should evaluate only matters

determined to be in error, not the cumulative effect of non-errors. *See* Morris v.

Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012) (cumulative error claim

fails in light of the absence of any individual errors to accumulate); United States v.

Waldon, 363 F.3d 1103, 1110 (11th Cir. 2004) (where no individual errors have been

demonstrated, no cumulative errors can exist); Mullen v. Blackburn, 808 F.2d 1143,

1147 (5th Cir. 1987) ("Mullen cites no authority in support of his assertion, which, if

---

[3] The law of the other circuit courts of appeals is mixed on the issue of whether a claim of "cumulative effect" or "cumulative error" is cognizable on federal habeas. The Fourth, Sixth and Eighth Circuits do not recognize cumulative error claims on federal habeas. *See* Williams v. Anderson, 460 F.3d 789, 816 (6th Cir. 2006) (claims of cumulative error are not cognizable on federal habeas because the Supreme Court has not spoken on this issue); Fisher v. Angelone, 163 F.3d 835, 852–53 (4th Cir. 1998) (ineffective assistance of counsel claims, like claims of trial court error, must be reviewed individually, rather than collectively); Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir. 1996) ("Neither cumulative effect of trial errors nor cumulative effect of attorney errors are grounds for habeas relief."). The Ninth Circuit recognizes cumulative error claims and expressly recognized Chambers v. Mississippi, 410 U.S. 284 (1973) as the clearly established federal law governing such claims. *See* Parle v. Runnels, 505 F.3d 922, 928–29 (9th Cir. 2007). The Tenth Circuit recognizes cumulative error claims and recognized Brecht v. Abrahamson, 507 U.S. 619 (1993) as the clearly established federal law on this issue. *See* Darks v. Mullin, 327 F.3d 1001, 1018 (10th Cir. 2003). The Second and Seventh Circuits recognize cumulative effect analysis of individual claims of ineffective assistance of counsel in applying the prejudice prong of Strickland. *See* Williams v. Washington, 59 F.3d 673, 682–84 (7th Cir. 1995); Rodriguez v. Hoke, 928 F.2d 534 (2d Cir. 1991).

adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit.  We receive enough meritless habeas claims as it is; we decline to adopt a rule that would have the effect of soliciting more and has nothing else to recommend it.  Twenty times zero equals zero."); *see also* United States v. Hall, 455 F.3d 508, 520 (5th Cir. 2006); Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002) (where there is no single constitutional error, nothing can accumulate to the level of a constitutional violation); United States v. Hardy, 224 F.3d 752, 757 (8th Cir. 2000); Angelone, 163 F.3d at 852–53; Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir. 1998); United States v. Rivera, 900 F.2d 1462, 1471 (10th Cir. 1990) ("[A] cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors."); United States v. Conteh, 234 Fed. Appx. 374, 2007 WL 1229043 (6th Cir. 2007).

Here, Petitioner has not shown error of a constitutional dimension with respect to any of the alleged errors of trial counsel asserted in the § 2254 petition.  Therefore, Petitioner is not entitled to federal habeas relief on this "cumulative error" claim.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied

on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

## IV.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a JOA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'"  Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (quoting § 2253(c)(2)).  "At the JOA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"  Buck v. Davis, 580 U.S.—, 137 S. Ct. 773 (2017) (citing Miller-El, 537 U.S. at 327).  The petitioner here cannot make that

showing. Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 28th day of December 2017.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**